IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DANIELLE SWASEY; D.S., BY AND THROUGH HER GUARDIAN AD LITEM, DANIELLE SWASEY; DANTE KETCHENS, D.K., BY AND THROUGH HIS GUARDIAN AD LITEM, DANTE KETCHENS,, <br><br> Plaintiffs, <br> v. <br><br> WEST VALLEY CITY; SHAUN COWLEY; KEVIN SALMON; SEAN MCCARTHY; JOHN COYLE; THAYLE "BUZZ" NIELSEN; and DOES 1-10, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER [18] GRANTING DEFENDANTS' MOTION TO DISMISS.** <br><br><br> Case No. 2-13-cv-00768-DN <br><br> District Judge David Nuffer |

Defendants Police Chief Thayle Nielsen ("Nielsen") and West Valley City ("WVC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move[1] for dismissal of Plaintiffs' second cause of action—the *Monell* claim—on the basis that Plaintiffs' Complaint[2] fails to allege facts sufficient to state a plausible claim for relief against them ("Defendants' Motion"). In response,[3] Plaintiffs contend that they have alleged sufficient facts to withstand the motion to dismiss. Alternatively, Plaintiffs ask for permission to amend if their allegations are deficient. After carefully reviewing the parties' filings, and viewing all well-pleaded allegations in light most favorable to the Plaintiffs, Defendants' Motion is GRANTED for the reasons set forth below. Leave is granted to amend against West Valley City and Nielsen.

---

[1] Defendants West Valley City and Thayle Nielsen's Motion to Dismiss Plaintiffs' Second Cause of Action (*Monell*) Pursuant to FRCP 12(b)(6) ("Motion"), docket no. 18, filed November 18, 2013.

[2] Complaint for Damages (Violation of Civil Rights) ("Complaint"), docket no. 1, filed August 14, 2013.

[3] Plaintiffs' Opposition to Defendants West Valley City and Thayle "Buzz" Nielsen Motion to Dismiss Plaintiffs' Second Cause of Action (*Monell*) ("Opposition"), docket no. 24, filed December 16, 2013.

BACKGROUND ........................................................................................................................ 2
MOTION TO DISMISS STANDARD.................................................................................... 3
LIABILITY OF WEST VALLEY CITY ................................................................................ 3
      A.     An Informal Custom ............................................................................................... 4
           i.     Continuing, Persistent and Widespread Practice of Unconstitutional
                Misconduct................................................................................................ 7
           ii.    Deliberate Indifference by the Policymaking Officials ............................ 8
           iii.   Injury Pursuant to the Custom ................................................................. 9
      B.     Ratification........................................................................................................... 10
      C.     Failure to Train or Supervise .............................................................................. 11
NIELSON'S LIABILITY ........................................................................................................ 13
ORDER ..................................................................................................................................... 15

# BACKGROUND[4]

Plaintiffs allege that on August 15, 2012, West Valley police officers John Coyle, Shaun Cowley, Kevin Salmon, Sean McCarthy, and other defendant officers (collectively "Officers") illegally detained Plaintiffs Danielle Swasey ("Swasey"), her infant daughter "D.S.," Dante Ketchens ("Ketchens"), and his juvenile son "D.K." in their home, while illegally searching their home.[5] The Officers handcuffed Swasey and Ketchens for more than eight hours.[6] Swasey was unable to take care of her infant daughter during this time.[7] While in Plaintiffs' home, the Officers ate pizza, played video games and mocked Swasey and the children.[8] After searching the home, the Officers forged Ketchens's signature on a consent to search form in order to obtain a search warrant for the home.[9] Ketchens was arrested after officers allegedly found illegal drugs in the home during the search.[10] He was released 72 hours later.[11]

---

[4] The following facts are taken from the Complaint.

[5] Complaint at 2.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id*.

[10] *Id.*

[11] *Id*.

## MOTION TO DISMISS STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face.'"[12] To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."[13] "Factual allegations must be enough to raise a right to relief above the speculative level."[14] And although all well-pleaded facts in the complaint are presumed true, conclusory allegations will not be considered.[15] Conclusory allegations are allegations that "do not allege the factual basis" for the claim.[16] The court is not bound by a complaint's legal conclusions couched as facts.[17]

## THE MONELL CLAIM AGAINST WEST VALLEY CITY MUST BE DISMISSED

It is well established that a municipality cannot be held liable pursuant to 42 U.S.C. § 1983 for the unconstitutional conduct of its employees under a theory of *respondeat superior*.[18] However, in *Monell*, the United States Supreme Court held that municipalities may be held liable for violations of civil rights, if the municipality has adopted or otherwise promulgated a policy or custom that violated the plaintiff's constitutional rights ("*Monell* Claim").[19] For this reason, "a municipality is liable only when the official policy [or unofficial custom] is the 'moving force

---

[12] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[13] *VanZandt v. Oklahoma Dept. of Human Services,* 276 F. App'x 843, 846 (10th Cir. 2008) (quoting *Robbins,* 519 F.3d at 1247.)

[14] *Twombly,* 550 U.S. at 555.

[15] *See Tal v. Hogan,* 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied,* 549 U.S. 1209 (2007).

[16] *Brown v. Zavaras,* 63 F.3d 967, 972 (10th Cir. 1995).

[17] *See Twombly,* 550 U.S. at 555.

[18] *Monnell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978); *Moss v. Kopp,* 559 F.3d 1155, 1167 (10th Cir. 2009) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." (citation and internal quotation marks omitted)).

[19] *Monell,* 436 U.S. at 690.

behind the injury alleged.'"[20] A plaintiff must show not only that his injury was the result of a custom or policy, but that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[21]

The Tenth Circuit recently reaffirmed the three required elements for imposing liability on a municipality: (1) an official policy or custom, (2) causation, and (3) state of mind.[22] "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible."[23] An official policy or custom may take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.[24]

Here, Plaintiffs rely on the second, fourth and fifth categories of policy or custom. Plaintiffs contend that their alleged facts "show widespread and systematic constitutional violations, ratification, and failure to train."[25] Each category is addressed in turn below.

### A. An Informal Custom

"[T]he Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is

---

[20] *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Board of County Com'rs of Bryan County, Okl. V. Brown,* 520 U.S. 397 (1997)).

[21] *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769 (10th Cir. 2013).

[22] *Id.*

[23] *Id.* (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)).

[24] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation and quotation marks omitted).

[25] Opposition at 5.

'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'"[26] To establish municipal liability on the basis of custom or practice, a plaintiff must sufficiently allege:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [municipality's employees];
>
> (2) Deliberate indifference to or tacit approval of such misconduct by the . . . [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and
>
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts.[27]

Plaintiffs argue that their Complaint provides numerous examples of a widespread custom of violating civil rights.[28] Plaintiffs cite to the following paragraphs in their Complaint to demonstrate the existence of such custom:

> [T]he narcotics unit of West Valley Police Department, . . . engaged in a pattern and practice of illegal conduct and widespread and systemic corruption, sanctioned by the West Valley Police Department.[29]
>
> Defendant John Coyle was the lieutenant in charge of the narcotics unit and the supervisor of Officers Cowley, Salmon, and McCarthy. He not only tolerated known wrongdoings by officers within his unit, but he also actively participated in the rampant corruption.[30]
>
> Defendant Thayle "Buzz" Nielsen was the former police chief of the West Valley Police Department and ultimately responsible for the officers within his command. His lack of oversight and supervision, and his disregard for the constitutional rights of the public, resulted in the wrongdoings alleged herein. . . .[31]

---

[26] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970)); *accord Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 736 (1989) (governmental entities may be liable for a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity.").

[27] *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

[28] Opposition at 2 (citing to ¶¶ 5–10, 32–38 of their Complaint).

[29] Complaint ¶ 5.

[30] *Id.* ¶ 6.

[31] *Id.* ¶ 7.

In the last year, the narcotics unit of the West Valley Police Department was disbanded. To date, two supervisors and at least five other rank and narcotics unit officers have been placed on administrative leave, along with Officers Cowley and Salmon; another West Valley City Police Department officer, Michael Valdes, was discovered in Wyoming, dead from what appeared to be a self-inflicted gunshot wound; and Chief Nielsen has retired.[32]

West Valley City admits to rampant corruption and systemic constitutional violations by its officers, including mishandling of evidence, confiscation of drugs for personal benefit, theft of seized property, illegal use of GPS tracking systems, improper use of confidential drug informants, and commission of perjury.[33]

In the last year, Salt Lake County District Attorney Sim Gill has sought the dismissal of more than100 [*sic*] criminal cases and the United States Attorney's Office has dismissed more than ten criminal cases as a result of the illegal conduct of the defendant officers and others within the Department.[34]

West Valley City continued the employment of Cowley, Salmon, and McCarthy, and allowed little to no supervision of these officers in spite of the fact that these officers had prior citizen complaints for misconduct.[35]

The widespread corruption in the West Valley Police Department, and in particular, within the narcotics unit, includes mishandling of evidence, confiscation of drugs for personal benefit, theft of seized property, illegal use of GPS tracking systems, forging consent to search forms, improper use of confidential drug informants, and commission of perjury.[36]

The pervasive and rampant misconduct engaged in by West Valley police officers, and particularly the narcotics unit, are evidence of the City's deliberate indifference to the constitutional rights of the citizens of West Valley, as well as evidence of policies and practices that allow for the violations of the Fourth and Fourteenth Amendments, as alleged herein.[37]

The City's deliberate indifference in the training of its law enforcement officers related to the use of reasonable force and lawful seizures, as well

---

[32] *Id.* ¶ 8.

[33] *Id.* ¶ 9.

[34] *Id.* ¶ 10.

[35] *Id.* ¶ 33.

[36] *Id.* ¶ 34.

[37] *Id.* ¶ 35.

> as the deliberate indifference by the police department's hierarchy to the safety of its citizens or the adherence to the Constitution's protection of individual rights, are the moving force behind the misconduct engaged in by the officers. . . .[38]
>
> [T]he City's ratification of police misconduct, along with its failure to conduct adequate investigations of misconduct, led to the violations of the Plaintiffs' constitutional rights.[39]
>
> [T]he customs and policies of the West Valley City Police Department were the moving force behind the violations of Plaintiffs' rights.[40]

   i.   *Continuing, Persistent and Widespread Practice of Unconstitutional Misconduct*

In support of their § 1983 claim against WVC for abridgement of their Fourth Amendment rights to be free from unreasonable search and seizure, Plaintiffs allege that the narcotics unit of the West Valley Police Department engaged in a variety of unconstitutional misconduct—such as mishandling of evidence, confiscation of drugs for personal benefit, theft of seized property, illegal use of GPS tracking systems, forging consent to search forms, improper use of confidential drug informants, and commission of perjury.[41] Plaintiffs claim that these constitutional violations were a widespread practice.[42]

To prove a "continuing, persistent and widespread" practice that supports a *Monell* claim, Plaintiffs must generally offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way.[43] Although Plaintiffs need not offer *evidence* of similarly situated individuals being mistreated in a similar way at the motion to dismiss stage, they must, however, *allege* that similarly situated individuals were mistreated by the municipality in a similar way. Of the various violations alleged by Plaintiffs, only the forging of

---

[38] *Id.* ¶ 36.

[39] *Id.* ¶ 37.

[40] *Id.* ¶ 38.

[41] Opposition at 5.

[42] *Id.*

[43] *Carney v. City and Cnty. of Denver,* 534 F.3d 1269, 1274 (10th Cir. 2008).

the consent to search form allegation is a mistreatment that is similar to the mistreatment Plaintiffs allegedly received. Under the liberal standard afforded complaints when considering a motion to dismiss, the allegations in the Complaint are sufficient enough to support an inference that the custom of forging a consent to search form was a continuing, persistent and widespread practice. The allegations are insufficient to connect any other of the violations Plaintiffs allege to a custom or practice.

   ii.   *Deliberate Indifference by the Policymaking Officials*

Plaintiffs must also sufficiently allege that the municipality or the municipality's policymaking officials had notice of the alleged widespread practice and acted with deliberate indifference towards the previously alleged violations. Here, Plaintiffs fail to allege that the municipality was aware of the widespread practice of forged consent forms. Plaintiffs, in their Complaint, allege that "West Valley City admits to rampant corruption and systemic constitutional violations by its officers, including mishandling of evidence, confiscation of drugs for personal benefit, theft of seized property, illegal use of GPS tracking systems, improper use of confidential drug informants, and commission of perjury."[44] But Plaintiffs do not allege that WVC "admits" to the forging of the consent to search form.

Plaintiffs also have not identified a final "policymaking official" that had notice of the alleged widespread practice and have also failed to sufficiently allege deliberate indifference. The deliberate indifference standard may be satisfied "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm."[45] Plaintiffs claim that "[t]he pervasive and rampant misconduct engaged in by West Valley Police officers,

---

[44] Complaint ¶ 9.

[45] *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1999)).

and particularly the narcotics unit, are evidence of the City's deliberate indifference to the constitutional rights of the citizens . . . ."[46] This is a broad and conclusory allegation. Plaintiffs provide no factual allegations to support their conclusory statement that the municipality or its policymaking officials had *notice* of the forged consent form misconduct, and consciously and deliberately chose to *disregard* the risk of harm. Plaintiffs thus fail to satisfactorily allege the second element of a custom claim.

iii. *Injury Pursuant to the Custom*

"To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected rights. There must be "a direct causal link between the municipal action and the deprivation of federal rights."[47] Thus, Plaintiffs must sufficiently allege that the municipality's custom of allowing forged consent to search forms was the "moving force" behind the unreasonable search of Plaintiffs' residence. Plaintiffs allege that they "are informed and believe, and thereon allege, that the customs and policies of the West Valley City Police Department were the moving force behind the violations of Plaintiffs' rights."[48] This allegation is simply a recitation of the elements of a *Monell* claim and is insufficient. Plaintiffs allege no additional facts upon which to infer a direct causal link between WVC's alleged custom of forged consent forms and the Officers' alleged violation of Plaintiffs' constitutional rights by leaving them handcuffed so long, preventing care of the infant child, eating, playing video games and mocking them. Plaintiffs have failed to plausibly allege that WVC's custom was the moving force behind the constitutional deprivation that Plaintiffs' suffered and there appears to be no causal relationship.

---

[46] Complaint ¶ 35

[47] *Schneider*, 717 F.3d at 769 (citation and quotation marks omitted).

[48] Complaint ¶ 38.

Plaintiffs have failed to satisfactorily allege a plausible claim that their constitutional rights were violated due to a custom of WVC.

### B. *Ratification*

Municipal liability can also be found if a final municipal policymaker ratifies the conduct or decision of a subordinate and the basis for the conduct or decision.[49] Under a § 1983 theory of ratification, "[t]he final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the moving force, or cause, of the alleged constitutional violation."[50] Here, Plaintiffs have failed to plausibly allege that WVC ratified the officers' conduct. Plaintiffs, in their Complaint, allege ratification in the following paragraphs:

> Plaintiffs are informed and believe that Does 1 through10 [*sic*] were police officers with the City of West Valley and each of them approved, ratified, condoned, encouraged, participated in, and/or sought to cover up the continuing pattern and practice of misconduct and/or civil rights violations by Defendants.[51]
>
> Defendants Coyle, Nielsen, West Valley City . . . knowingly and with gross negligence maintain, permit, and ratify policies [*sic*] and customs which allow the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the constitutional rights of citizens.[52]
>
> [T]he City's ratification of police misconduct, along with its failure to conduct adequate investigations of misconduct, let to the violations of the Plaintiffs' constitutional rights.[53]

These allegations of ratification are largely conclusory. Such conclusory allegations that Nielsen, and WVC ratified the police misconduct are insufficient to "nudge[]" their ratification claim "across the line from conceivable to plausible."[54] Also, to hold WVC liable under this

---

[49] *Brammer–Hoelter v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1189 (10th Cir. 2010).

[50] *Dempsey v. City of Baldwin,* 143 Fed.Appx. 976, 986 (10th Cir. 2005) (citing *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915).

[51] Complaint ¶ 23.

[52] *Id.* ¶ 32.

[53] *Id.* ¶ 37.

[54] *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins,* 519 F.3d at 1247.

theory, Plaintiffs must sufficiently allege that WVC's *authorized policymaker* affirmatively approved of the alleged unconstitutional conduct and the basis for the conduct or decision. Simply referring to WVC is inadequate. Plaintiffs do not allege that Nielsen was WVC's authorized policymaker. Moreover, Plaintiffs' Complaint fails to allege any facts regarding an "affirmative approval" of the Officers' actions, which is required in order to impose municipal liable under a ratification theory.[55] For these reasons, Plaintiffs fail to plead a plausible ratification claim.[56]

### C. Failure to Train or Supervise

Plaintiffs seek to hold WVC liable under § 1983 based on an alleged failure to train and supervise its officers.[57] A municipality cannot be held liable under § 1983 "for its failure to train or supervise . . . unless . . . [its] policymakers 'can reasonably be said to have been deliberately indifferent to the need' for further training or supervision.'"[58] Deliberate indifference may be demonstrated

> when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.[59]

---

[55] *See Patrick v. City of Overland Park, Kan.,* 937 F.Supp. 1491, 1499 (D.Kan. 1996) ("In order to impose liability under § 1983 on a theory of ratification, plaintiff must allege more than mere acquiescence by a final policymaker in a subordinate's actions . . . [and instead] must allege . . . that the final policymaker affirmatively approved the particular action of the subordinate.").

[56] *Robbins,* 519 F.3d at 247.

[57] Complaint ¶ 36.

[58] *Bryson,* 627 F.3d at 789 (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)).

[59] *Id.*

Thus, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."[60]

Here, Plaintiffs have failed to state a §1983 claim for municipal liability pursuant to a failure to train or supervise theory. Plaintiffs' Complaint does not contain sufficient allegations of inadequate training regarding unreasonable searches that amounts to a deliberate indifference to citizens' Fourth Amendment rights. Plaintiffs fail to allege what training or supervision the Officers received, how it was deficient, or why or how the need for more or different training or supervision was obvious; instead, they claim that the alleged constitutional violation is indicative of a failure to train or supervise. It is not enough to simply point out "[t]hat a particular officer may be unsatisfactorily trained" or "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."[61] Such arguments "could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable to respond properly to the usual and recurring situations with which they must deal."[62] Simply put, even "adequately trained officers occasionally make mistakes[.]"[63]

Only a single paragraph in Plaintiffs' Complaint alleges insufficient training by WVC. That paragraph reads:

> The City's deliberate indifference in the training of its law enforcement officers related to the use of reasonable force and lawful seizures, as well as the deliberate indifference by the police department's hierarchy to the safety of its citizens or the adherence to the Constitution's protection of individual rights, are the moving force behind the misconduct engaged in by the officers as alleged herein. The

---

[60] *City of Canton,* 489 U.S. at 388.

[61] *City of Canton*, 489 U.S. at 390–91.

[62] *Id.*

[63] *City of Canton*, 489 U.S. at 391.

widespread corruption and misconduct of West Valley City officers are all factors leading to the violation of Plaintiffs' constitutional rights.[64]

This allegation reflects the "formulaic recitation" of "bare assertions" deemed categorically deficient by the Supreme Court in *Iqbal* and *Twombly*.[65]

Plaintiffs have also failed to offer any factual allegations to support their conclusory assertion that WVC acted with "deliberate indifference." Plaintiffs' Complaint does not contain any factual allegations indicating that WVC, through its policymakers, had actual or constructive notice that its alleged failure to train or supervise the Officers would result in violation of Plaintiffs' constitutional rights. Plaintiffs contend that "municipal liability may be found when plaintiff can show that the *supervisor* 'acted knowingly or with 'deliberate indifference' that a constitutional violation would occur.'"[66] Plaintiffs' contention is without merit. A municipality will only be held liable for its own acts—acts which the city or its final policymaker "has officially sanctioned or ordered."[67] Here, WVC cannot be held liability for the actions of a *supervisor*, unless that supervisor is a final policymaking official. Plaintiffs, however, have not identified any individual with such a final policymaking status.

## THE MONELL CLAIM AGAINST NIELSON MUST BE DISMISSED

Plaintiffs' Complaint does not identify whether they bring their *Monell* claim against Nielsen in his individual or official capacity. Having the *"Monell"* label within the title of the second cause of action, however, suggests that Plaintiffs are bringing this claim against Nielsen

---

[64] Complaint ¶ 36.

[65] *Phillips v. Bell*, 365 F. App'x 133, 138 (10th Cir. 2010) (citing *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[66] Opposition at 7 (emphasis added) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1196 (10th Cir. 2010) (discussing § 1983 supervisory liability).

[67] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

in his official capacity, and that this is not a supervisory liability claim.[68] The wrongful act alleged by Nielsen is that he and the City "maintain, permit, and ratify[ ]policies and customs which allow the occurrence of the types of wrongs set forth hereinabove[.]"[69] That reads as a *Monell* claim, based on official policy.

Any claim against Nielsen in his official capacity is a claim against WVC, the entity that employs Nielsen. An action against a municipality and an action against a municipal official acting in his or her official capacity are the same.[70] Thus, Plaintiffs' *Monell* claim against Nielsen in his official capacity is redundant with their *Monell* claim against the municipality, subject to the same infirmity, and is therefore dismissed.[71]

Insofar as Plaintiffs seek to hold Neilson personally liable in his individual capacity, Plaintiffs have not provided any case law to contradict the general rule that § 1983 does not allow for personal liability under a theory of respondeat superior.[72] "Personal liability 'under § 1983 must be based on personal involvement in the alleged constitutional violation.'"[73] The Complaint fails to allege facts suggesting Nielson was personally involved in any action giving

---

[68] The allegations in Plaintiffs' Complaint do not meet the standard for supervisory liability, which requires allegations that (1) Nielsen promulgated or was responsible for a policy that (2) caused the constitutional harm and (3) he acted with the state of mind required to establish the alleged constitutional deprivation. *See Dodd*, 614 F.3d at 1199. Plaintiffs do not allege that Nielsen promulgated or was responsible for a policy, they simply argue that Nielsen maintained, permitted, and ratified the alleged policy. *See* Complaint ¶ 32.

[69] Complaint ¶ 32.

[70] *See Myers v. Oklahoma County Bd. of County Comm'rs,* 151 F.3d 1313, 1316 n. 2 (10th Cir.1998) (citation and quotation omitted); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Karcher v. May,* 484 U.S. 72, 78 (1987) ("[T]he real party in interest in an official-capacity suit is the entity represented and not the individual officeholder.").

[71] *See e.g., Fail v. W. Valley City*, 2:04-CV-1094-PGC, 2006 WL 842910 (D. Utah Mar. 28, 2006) (quoting *Gallardo v. Board of County Com'rs*, 1995 WL 106366, *2 (D. Kan. 1995) ("When the municipality is sued along with the municipal officer in his official capacity, the suit against the officer is redundant, improper, and unnecessary and should be dismissed."); *Blazier v. Larson*, 2:09-CV-1132-DAK, 2011 WL 776208 (D. Utah Feb. 25, 2011) aff'd, 443 F. App'x 334 (10th Cir. 2011) (Because Mr. Larson represents his employer, Utah County, the law requires this court to dismiss the claims against Mr. Larson in his official capacity.").

[72] *Brown f. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

[73] *Id.* (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

rise to Plaintiffs' claims.[74] Thus, this cause of action fails to state a claim against Nielsen in his individual capacity. Leave is granted to amend to allege facts suggesting Nielson was personally involved in any action giving rise to Plaintiffs' claims.

## ORDER

The motion to dismiss Plaintiffs' second cause of action is GRANTED. Plaintiffs have requested leave to amend their Complaint. The federal rules provide that leave to amend shall be freely given when justice requires.[75] Since it is early in the development of this case, and leave to amend is to be freely given, Plaintiffs may file an amended complaint within 21 days from the date of this Order as to their *Monell* claim against West Valley City and stating a claim for individual liability against Nielsen.

Dated February 5, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[74] *See Schneider*, 717 F.3d at 768 ("Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation.") (citation and internal quotation marks omitted)).

[75] Fed. R. Civ. P. 15.