IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DANIELLE SWASEY; D. S., BY AND THROUGH HER GUARDIAN AD LITEM, DANIELLE SWASEY; DANTE KETCHENS, D. K., BY AND THROUGH HIS GUARDIAN AD LITEM, DANTE KETCHENS,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>WEST VALLEY CITY; SHAUN COWLEY; KEVIN SALMON; SEAN MCCARTHY; JOHN COYLE; THAYLE "BUZZ" NIELSEN; and DOES 1-10,<br><br>　　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br><br><br>Case No. 2:13-cv-00768-DN-BCW<br><br>District Judge David Nuffer<br>Magistrate Judge Brooke C. Wells |

Plaintiffs' Amended Complaint contains five causes of action.[1] Plaintiffs' Second Cause of Action arises under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*.[2] Plaintiffs allege in support of their Second Cause of Action that "Defendant West Valley City maintained official policies and customs that violated citizens' constitutional rights, including those of Plaintiffs."[3]

Defendants West Valley City and Thayle Nielsen ("Defendants") move for summary judgment on Plaintiffs' Second Cause of Action ("Motion").[4] Plaintiffs oppose the Motion

---

[1] Amended Complaint, docket no. 44, filed Feb. 26, 2015.

[2] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).

[3] Amended Complaint at 9, ¶ 39.

[4] Defendant West Valley City and Thayle Nielsen's Motion for Summary Judgment ("Motion"), docket no. 108, filed Mar. 15, 2016.

("Opposition")[5] and Defendants filed a reply in support of their Motion ("Reply").[6] Plaintiffs were granted leave to file a sur-reply ("Sur-Reply"), which they filed on January 10, 2017.[7] For the reasons below, the Motion is GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[9] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[10] Here, all factual inferences will be drawn most favorably to Plaintiffs.

The moving party—here, the Defendants—"bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[11] If the Defendants make a prima facie demonstration, Plaintiffs must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the [Plaintiffs]."[12] "To accomplish this, the facts must

---

[5] Plaintiffs' Opposition to Motion for Summary Judgment ("Opposition"), docket no. 170, filed Sep. 30, 2016.

[6] Reply in Support of WVC Defendants' Motion for Summary Judgment ("Reply"), docket no. 177, filed Oct. 27, 2016.

[7] Plaintiffs' Sur-Reply to Defendants West Valley City and Thayle Nielsen's Motion for Summary Judgment ("Sur-Reply"), docket no. 188, filed Jan. 10, 2017.

[8] Fed. R. Civ. P. 56(a).

[9] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[10] *Id.*

[11] *Id.* at 670-71.

[12] *Id.* at 671 (internal quotation marks omitted).

be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[13]

## RELEVANT UNDISPUTED FACTS[14]

### Factual Background[15]

On August 15, 2015, officers in the West Valley City Police Department received information from a confidential informant that a person by the name of Dante Ketchens was in possession of drugs and a gun. The officers set up surveillance in the area around the residence of Ketchens's girlfriend, Danielle Swasey, where they believed Ketchens was located. When Ketchens left the residence in a vehicle, they followed him. When Ketchens committed a moving traffic violation, officers stopped him and asked for his driver's license. Ketchens said it was in the back in a bag, and said that one of the officers could retrieve it. While retrieving it, the office observed baggies of marijuana in Ketchens's vehicle. The officer asked Ketchens what was in the baggies, and Ketchens admitted it was marijuana.[16]

The officers then asked Ketchens if he had any more drugs back at the house. Ketchens said no, but that the officers were welcome to go back to his house and check. The officers prepared a consent-to-search form and had Ketchens sign it, although Ketchens claims he never

---

[13] *Id.*

[14] These facts are derived from the Motion, Opposition, and Reply. Facts that the parties have indicated as "undisputed" are included in this section verbatim, with minor changes where necessary for clarification. Facts that the parties have indicated as disputed are included in the following section entitled "Disputed Facts," with further discussion in the footnotes. Even though there are disputed facts regarding the "official policy" and "state of mind" elements, summary judgment is still appropriate because there is no genuine dispute of material fact regarding the "causation" element.

[15] After traditional briefing closed, Plaintiffs were invited to "respond[] to Part I A of the Reply Memorandum, including the facts and legal issues raised in that section" and state any dispute to factual content contained in docket no. 108-5. Docket Text Order, docket no. 184, entered Dec. 27, 2016. But Plaintiffs did not do so. Consequently, the facts recited in this "Factual Background" section are considered undisputed for purposes of this motion for summary judgment.

[16] Sur-Reply at 8, n. 1 ("Defendants' assertion that Mr. Ketchens told Detective Salmon he had marijuana in his vehicle is also correct.").

signed any consent to search form.[17] Ketchens escorted officers to the house, and while still in handcuffs from the traffic stop, opened the front door and let the officers in the house.[18]

### Official Policy Facts

1.      Plaintiffs Amended Complaint alleges the Neighborhood Narcotics Unit ("NNU"), a subdivision of the West Valley Police Department, maintained policies and customs resulting in widespread, pervasive wrongdoing and illegal activity, including "[f]orging signatures on consent-to-search forms."[19]

2.      Plaintiffs Amended Complaint also alleges "the same officers, comprising the NNU, engaged in the identical illegal conduct of using forgeries and making false representations against Plaintiffs as had occurred in other dismissed cases involving similarly-situated individuals whose constitutional rights were violated."

3.      During discovery Plaintiffs provided no evidence of the Municipal Defendants' use of forged documents in other cases.

4.      Plaintiffs Amended Complaint alleges that West Valley City admits to rampant corruption and systemic constitutional violations by its officers, including the forging of consent-to-search forms, etc.

5.      In support of this allegation, Plaintiffs cite to the July 2, 2014 deposition of Wayne Pyle, the CEO and City Manager of West Valley City.

---

[17] *Compare* Det. Salmon Police Report, Ex. 5 to Motion, docket no. 108-5, filed Mar. 15, 2016 *with* Ketchens Dep. at 28:23-24, Ex. 6 to Motion, docket no. 108-6, filed Mar. 15, 2016.

[18] Salmon Dep. at 17:9-18, Ex. 7 to Motion , docket no. 108-7, filed Mar. 15, 2016.

[19] Plaintiffs dispute this fact, arguing the Amended Complaint alleges more wrongdoing than simply forging signatures on consent-to-search forms. Opposition at 4, ¶ 1. Plaintiffs are correct, but this does not create a genuine dispute of fact since the word "including" signifies there is a larger set of alleged malfeasance and this fact does not purport to state that "forging signatures on consent-to-search forms" is the *only* alleged wrongdoing.

6.     Nowhere in Mr. Pyle's deposition testimony did he admit to knowledge of the use of forged documents or forged consent-to-search forms.

7.     Mr. Pyle was not aware of any alleged wrongdoing with the West Valley City Police Department until the first quarter of 2013, months after the August 15, 2012 search of Plaintiffs' residence.

8.     Plaintiffs have provided no evidence that West Valley City admitted to knowledge of the use of forged "consent to search" forms during discovery in this case or other cases.

9.     West Valley City has also produced logs of all complaints lodged against the officers involved in this case.

10.     Plaintiffs allege that the Municipal Defendants failed to train and supervise their officers.

11.     The Municipal Defendants have provided Plaintiffs detailed training records.

**Causation Facts**

1.     Plaintiffs allege Defendants conducted an unlawful and illegal search of Plaintiff Danielle Swasey's home on August 15, 2015.

2.     Plaintiffs contend that the search was unconstitutional because Defendants forged the "consent-to-search" form and conducted an unlawful search of the Swasey home prior to obtaining a search warrant.

3.     The officers who entered the home of Danielle Swasey on August 15, 2012 located a gun in plain sight in Danielle Swasey's bedroom.

4.     The other evidence seized in the home was in plain sight.

5.     The officers then obtained a search warrant for the home.

6.      Seizing firearms and obtaining a search warrant is typical of police work when entering an unsecured location.

7.      Plaintiffs never asked the Defendants to leave the home on August 15, 2002.

8.      Plaintiffs did not see the officers handling or signing any paperwork at the site of the traffic stop or at Danielle Swasey's home.

9.      The complaint logs of the Defendants in this case that were provided to Plaintiffs do not contain any complaints with regard to forged documents.

### State of Mind Facts

1.      Plaintiffs contend that four West Valley City policymakers, including Wayne Pyle, Paul Isaac, Thayle "Buzz" Nielsen and John Coyle, knew of the unlawful activities, including the unlawful activities directed towards the Plaintiffs.

### DISCUSSION

Municipalities are liable for civil rights violations if the municipality has adopted a policy or custom that violated the plaintiff's constitutional rights.[20] But "[a] municipality is liable only when the official policy [or unofficial custom] is the 'moving force behind the injury alleged.'"[21] The plaintiff must show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[22] Thus, three elements are required to impose liability on a municipality for alleged civil rights violation ("*Monell* claim"): (1) an official policy or custom; (2) causation ("moving force"); and (3) state of mind ("deliberate indifference").[23]

---

[20] *Monell*, 436 U.S. 658, 690 (1978).

[21] *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Bd. of Cty. Com'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

[22] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

[23] *Id.*

Because Defendants are the movants, it is their burden to make "a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[24] Therefore, Defendants must show that the Plaintiffs do *not* have sufficient evidence to support their claim that West Valley City had an official policy or custom that was the moving force behind their alleged injury, which was enacted with deliberate indifference.[25] If Plaintiffs are able to identify evidence in support of their *Monell* claim, Defendants' Motion must be denied.

## Official Policy

"The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible."[26] An official policy or custom may take the form of:

(1) a formal regulation or policy statement;

(2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;

(3) the decisions of employees with final policymaking authority;

(4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or

---

[24] *Adler*, 144 F.3d at 670-71.

[25] *Id.* at 670.

[26] *Schneider*, 717 F.3d at 769 (quoting *Pembauer v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

(5) the failure to adequately train or supervise employees, so long as that failure

results from "deliberate indifference" to the injuries that may be caused.[27]

Defendants argue that Plaintiffs "have failed to provide *any evidence* of an official West

Valley City policy, custom or lack of training permitting or acquiescing in the use of forged

consent-to-search forms."[28] Defendants argue that Plaintiffs "base their *Monell* claims on a well-

settled custom or practice [#2], a final decision by a municipal policymaker [#3 and #4], and/or

deliberately indifferent training or supervision [#5]."[29]

Plaintiffs oppose Defendants arguments, but do not specifically state whether they base

their "official policy" argument on a formal regulation, an informal custom, decisions of

policymakers, ratification of employees' actions by policymakers, or failure to train. Instead,

Plaintiffs seem to vaguely suggest that all of the factors apply and that they have generally

"produced evidence sufficient to create a triable issue of material fact over whether a policy of

fabricating probable cause existed at the NNU."[30] The unspecific briefing is challenging to

decipher as it forces the court to determine on its own whether any of the bases enumerated

above apply. This analysis will be performed below, addressing each of the bases under a

separate heading.

Plaintiffs must show *what* the official policy is—whether the municipality established an

official policy (whether adopted formally or through widespread practice) of conducting illegal

searches, for example. Defendants attempt to confine Plaintiffs' argument to "[f]orging

signatures on consent-to-search forms" as a basis for the *Monell* claim.[31] Defendants argue that

---

[27] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

[28] Motion at 10 (capitalization omitted, emphasis added).

[29] *Id.*

[30] Opposition at 11 (capitalization omitted).

[31] Motion at 10.

"there is no official West Valley City policy allowing the use of forged consent-to-search forms."[32] But this focus only on consent-to-search forms is too narrow.

Defendants are correct that Plaintiffs included "forgery of consent-to-search forms" as a basis for their *Monell* claim, but Plaintiffs *also* allege other wrongdoing, including "[p]reparation of false reports to support unconstitutional searches, seizures, deprivations, and arrests."[33] Thus, Defendants incorrectly attempt to limit Plaintiffs' allegations to just "forgery of consent-to-search forms" when Plaintiffs clearly allege additional wrongdoing. For Defendants' Motion to be successful, Defendants must show that the Plaintiffs do not have sufficient evidence to support their *Monell* claim under any of the alleged wrongdoing—including "preparation of false reports . . . [,]" not just "forgery of consent-to-search forms."

Also, while Defendants are correct that a prior court order stated that "only the forging of the consent to search form allegation is a mistreatment that is similar to the mistreatment Plaintiffs allegedly received[,]"[34] this conclusion was reached when analyzing the *original* Complaint, which has since been amended.[35] The Amended Complaint includes new allegations of wrongful conduct, including the "preparation of false reports to support unconstitutional searches . . . ."[36] If Plaintiffs can identify evidence supporting their claim that West Valley City established an official policy of preparing false reports, forging consent-to-search forms, or any

---

[32] *Id.* at 11 (capitalization omitted).

[33] Amended Complaint ¶ 2 (alleging "Illegal detentions of citizens; Forging signatures on consent-to-search forms; Failures to record evidence seized from purported criminals; Sexual activity with citizens under criminal investigation; Misappropriation of seized evidence, including illicit drugs; Theft of seized funds, which were used as a 'drink fund' for the NNU; Preparation of false reports to support unconstitutional searches, seizures, deprivations, and arrests; Conversion of property belonging to aliens facing deportation through fraudulent documentation; and Payment of 'hush money' to cover up the aforementioned conduct").

[34] Memorandum Decision and Order [18] Granting Defendants' Motion to Dismiss at 7-8, docket no. 39, entered Feb. 5, 2015.

[35] *Compare* Complaint ¶ 34, docket no. 1, filed Aug. 14, 2013; *with* Amended Complaint ¶ 2 (containing different allegations of wrongdoing).

[36] Amended Complaint ¶ 2.

other wrongdoing alleged in the Amended Complaint, and can show that the official policy was enacted with deliberate indifference and was the moving force behind Plaintiffs alleged injuries, Plaintiffs will have successfully defeated Defendants' Motion.

Thus, the first question is whether West Valley City established an official policy of wrongdoing, such as preparing false reports or forging consent-to-search forms, through a formal regulation, a well-settled informal custom, a final decision by a policymaker, ratification of subordinates' actions by a policymaker, or failure to adequately train or supervise.

**(1) Plaintiffs Do Not Identify Evidence of a Formal Regulation or Policy**

A formal regulation or policy is "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers."[37] Plaintiffs' Amended Complaint does not allege that a formal regulation or policy was enacted by West Valley City that violated their constitutional rights. In fact, the Amended Complaint only alleges that "West Valley City's unconstitutional policies were *informal customs* that were so widespread and permanent they took the force of law."[38] The briefing contains no argument regarding formal regulation or policy. Thus, Plaintiffs cannot show the enactment of an "official policy" through formal regulation or policy.

**(2) Plaintiffs Have Identified Evidence of a Well-Settled Informal Custom**

Defendants argue that the only evidence Plaintiffs cite with regard to the establishment of an informal custom is the "deposition of Wayne Pyle, CEO and City Manager of West Valley City."[39]  This is incorrect. Plaintiffs also rely on the testimony of Shaun Cowley to argue that there was widespread tolerance of prevalence of misbehavior within the West Valley Police

---

[37] *Novitsky v. City of Aurora*, 491 F.3d 1244, 1250 (10th Cir. 2007) (internal quotation marks omitted).

[38] Amended Complaint ¶ 40 (emphasis added).

[39] Motion at 11-12.

Department. Cowley described two separate incidents where false search reports were prepared.[40] Accordingly to Cowley, during one incident, Officer Coyle claimed to smell marijuana as a basis for probable cause to conduct a search, but Cowley himself did not smell any marijuana. A search warrant was nevertheless executed. No marijuana was found.[41] During another incident, an officer claimed to have found cash in "plain view" when in fact he had discovered it after opening a closed drawer.[42] Cowley stated there were "multiple occasions" where West Valley Police Department engaged in this type of behavior and fabricated probable cause or generated false reports.[43]

Defendants reply that the acts described by Cowley "are not similar to the violation allegedly suffered by the Plaintiffs—the forgery of a consent to search form—and they cannot establish a 'custom' under *Monell*."[44] But Defendants' analysis is flawed. Similarity of the alleged acts is a *causation* question, not an official policy question. Defendants are correct that Plaintiffs must establish causation to have a valid *Monell* claim, but Defendants are incorrect that to establish a "custom," the acts described by Cowley must be similar to the violation allegedly suffered by Plaintiffs. The determination of whether a municipality has established an "official policy" by informal custom is dependent on whether a municipality has "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law[.]"[45]

---

[40] Dep. of Shaun Cowley ("Cowley Dep.") at 67:17-20, 80:24-81:3, docket no. 171-4, filed Sep. 30, 2016.

[41] Opposition at 12 (citing to Cowley's deposition).

[42] *Id.* at 13 (citing to Cowley's deposition).

[43] Cowley Dep. at 67:17, 20

[44] Reply at 8.

[45] *Bryson*, 627 F.3d at 788.

Defendants do not argue that the events described by Cowley *did not happen* or that there were *not* "multiple occasions" where West Valley Police Department fabricated probable cause, as Cowley described.[46] Thus, it must be presumed for this motion that the acts described by Cowley are true. That means there were "multiple occurrences" where the West Valley City Policy Department fabricated probable cause or generated false reports to substantiate searches. On the facts of this motion, this behavior was adopted and sanctioned by at least Coyle, who was in a position of authority within the Department.[47] For purposes of this motion, and viewing the factual record in the light most favorable to the Plaintiffs, this shows a "widespread practice" that is "permanent and well settled" within the West Valley City Policy Department, which establishes an "official policy" of "[p]reparation of false reports to support unconstitutional searches, seizures, deprivations, and arrests."[48]

**(3) Plaintiffs Have Identified Evidence of Final Decisions by Policymakers**

Plaintiffs have also identified evidence that West Valley City demonstrated an official policy of preparation of false reports "through the direct action of policymakers including Coyle and MT Johnson."[49] For example, Lieutenant Coyle, who was "third in command of the entire NNU,"[50] claimed to smell marijuana to establish probable cause for a search warrant when no marijuana was found at the location that was searched, and at least one other officer did not smell marijuana. Defendants did not refute that this occurred. Thus, there is evidence that the final decisions of policymakers, such as Coyle, resulted in an "official policy" of preparing false reports in conjunction with searches.

---

[46] Cowley Dep. at 67:17, 20.

[47] Cowley Dep. at 68:4-6, 71:16-22.

[48] Amended Complaint ¶ 2.

[49] Opposition at 14.

[50] *Id.* at 13; see also Cowley Dep. at 68:4-6 (describing Coyle as the "lieutenant of the NNU").

**(4) Plaintiffs Have Identified Evidence of Ratification by Policymakers**

Plaintiffs argue that top policymakers within the West Valley Police Department supervised and allowed "falsifying police reports in order to perform searches."[51] For example, Plaintiffs produced evidence that when Cowley questioned the propriety of the search revealing cash in the closed drawer, "Lieutenant Coyle told him to keep his mouth shut."[52] Defendants did not refute this. Thus, there is evidence that policymakers, such as Coyle, ratified decisions of subordinates that resulted in an "official policy" of preparing "false reports to support unconstitutional searches, seizures, deprivations, and arrests."[53]

**(5) Plaintiffs Have Identified Evidence of Failure to Adequately Train or Supervise**

A four-factor analysis must be performed when analyzing failure to train claims *when the use of force* is involved.[54] This analysis is referred to by Defendants in their Reply[55] and by Plaintiffs in their Opposition.[56] However, there is no indication that Plaintiffs' failure to train claim is based on the use of force. Thus, the multi-factor test employed by the Tenth Circuit in use of force cases is not clearly applicable here. The standard which applies was set forth by the U.S. Supreme Court: Is "the need for more or different training . . . so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need[?]"[57] Plaintiffs and Defendants fail to identify the difference between this case, which does not involve the use of

---

[51] Opposition at 13.

[52] *Id.* at 13 (citing Cowley Dep. at 59:1-61:3).

[53] Amended Complaint ¶ 2.

[54] *Allen v. Muskogee, Okla.*, 119 F.3d 837, 841 (10th Cir. 1997) ("To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers *in the use of force*, a plaintiff must show [the four factors].") (emphasis added)); *see also Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003).

[55] Reply at 8.

[56] Opposition at 14.

[57] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

force,[58] and the cases they cite that *do* involve the use of force. Thus, the standard set forth by the U.S. Supreme Court will be used to determine whether an official policy was established by the failure to adequately train or supervise NNU Officers within the West Valley City Police Department.

Defendants argue that "Plaintiffs have offered no evidence whatsoever during discovery to support the conclusory accusations in their Amended Complaint with regard to . . . the . . . Defendants' lack of training or supervision . . . ."[59] But this is incorrect. Plaintiffs cite to the deposition testimony of Shaun Cowley, who testified that he did not receive training on searches and seizures, but only received training on undercover operations.[60] Therefore, Defendants are incorrect that Plaintiffs have cited "no evidence" about the failure to train.

However, Cowley's testimony is contradicted by records produced by West Valley showing specific training Cowley received.[61] Several entries indicate training on search warrants.[62] Thus, his testimony that he "just had no training"[63] is contested. Viewing the factual record in the light most favorable to Plaintiffs, as must be done, Plaintiffs have shown that there is at least a dispute about whether the officers in the West Valley City Police Department received *adequate* training on conducting searches. The testimony from former Chief Deputy Larry Marx also supports Plaintiffs' argument that officers were not properly supervised and creates a genuine issue of fact about the adequacy of supervision and training within the NNU.[64]

---

[58] *See generally* Amended Complaint (omitting any allegations regarding the "use of force").

[59] Motion at 12.

[60] Opposition at 15.

[61] Shaun Cowley Training Report, Ex. D to Reply, docket no. 177-4, filed Oct. 27, 2016.

[62] *Id.*

[63] Cowley Dep. at 83:13.

[64] *See* Opposition at 15 (citing record).

He testified that Coyle was not "knowledgeable of what they're writing search warrants for or . . . what they're doing in their investigations."[65]

The testimony of Cowley and Marx raises serious questions about whether Coyle and others were deliberately indifferent to the need for training on warrants, searches, and probable cause. Because warrants, searches, and probable cause are topics that seriously affect constitutional rights, and because there are nuances that must be understood by police officers, it is reasonable to expect a police department to conduct training on those topics. Indeed, the need for such training is obvious because the lack of training will likely result in injury to constitutional rights. Thus, there is a genuine dispute about whether Defendants were deliberately indifferent to their need to provide adequate training and supervision.

Defendants argue that appropriate training occurred;[66] Plaintiffs argue it did not. Thus, there is a dispute of fact about how much training was provided and the adequacy of the training. It is possible that an official policy was established through West Valley City's failure to adequately train on probable cause.

**Conclusion to "Official Policy" Section**

Because Plaintiffs have identified evidence in support of their "official policy" argument, Defendants are not entitled to summary judgment on the "official policy" element. For purposes of this motion, and viewing the factual record in the light most favorable to the Plaintiffs, Plaintiffs have identified evidence that West Valley City Police Department had an official policy of preparing "false reports to support unconstitutional searches, seizures, deprivations, and arrests[,]"[67] including forgery of consent-to-search forms. These official policies were

---

[65] Depo. of Larry Marx ("Marx Dep.") at 32:9-11, Ex. 7 to Opposition, docket no. 171-7, filed Sep. 30, 2016.

[66] Reply at 9-10 (describing Cowley's training).

[67] Amended Complaint ¶ 2.

established through well-settled informal customs, the decisions of final policymakers, ratification of subordinates' decisions by final policymakers, or failure to adequately train or supervise.

Even though Plaintiffs have identified evidence supporting their argument that an "official policy" was established, Plaintiffs' *Monell* claim may still fail if they cannot show that the official policy was the "moving force" behind Plaintiffs' alleged injuries[68] or that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[69] Thus, the "causation" and "state of mind" elements will each be analyzed to determine whether there is a genuine issue of material fact on those issues. If Defendants can establish that there is no genuine issue with regard to "causation" or "state of mind," Defendants will be entitled to summary judgment.

## Causation

To establish the causation element, the challenged policy or practice must be "closely related to the violation of the plaintiff's federally protected right."[70] Plaintiffs must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[71] This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged."[72]

When a plaintiff claims that a municipality has caused an employee to inflict the alleged injury, "rigorous standards of culpability and causation must be applied to ensure that the

---

[68] *Barney*, 143 F.3d at 1307 (quoting *Brown*, 520 U.S. at 404).

[69] *Schneider*, 717 F.3d at 769.

[70] *Id.* at 770 (quoting Martin A. Schwartz, Section 1983 Litigation Claims & Defenses, § 7.12[B] (2013) ("Schwartz")).

[71] *Brown*, 520 U.S. at 404.

[72] *Id.*

municipality is not held liable solely for the actions of its employee."[73] "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring."[74]

Defendants argue that Plaintiffs have failed to establish causation because "Plaintiffs haven't offered any evidence in this case establishing that the . . . Defendants had knowledge" of forgery of consent-to-search forms.[75] Therefore, Defendants contend, "Plaintiffs have failed to create an issue of fact as to causation caused by the acquiescence of the Municipal Defendants when dealing with similar acts."[76] However, as explained above, the "official policy" is not confined solely to consent-to-search forms. Rather, the "official policy" is broader; it is the "[p]reparation of false reports to support unconstitutional searches, seizures, deprivations, and arrests."[77] Thus, to establish causation, Plaintiffs must "demonstrate a direct causal link between the [preparation of false reports] and the deprivation of federal rights."[78]

Defendants do not refute that a consent-to-search form was forged in this case. Because the forgery of a consent-to-search form falls within the category of "preparation of false reports to support searches," similarity has been established. But that is not the end of the analysis. The causation element is established only if the official policy is the "moving force" behind the alleged injury. That is, the preparation of false reports—specifically, the forgery of a consent-to-search form—must be the *cause* of Plaintiffs' alleged injury. Defendants argue that the allegedly

---

[73] *Id.* at 405.

[74] Schwartz, at § 7.12.

[75] Motion at 14-15.

[76] *Id.* at 15.

[77] Amended Complaint ¶ 2.

[78] *Brown*, 520 U.S. at 404.

false report was not the cause of Plaintiffs' injury because the search would have validly

occurred even without a consent-to-search form. Therefore, Defendants argue, there was

probable cause for the search.[79] Defendants are correct.

It is undisputed that there was probable cause to conduct a search based on statements

Plaintiff Ketchens made to the police.[80] After officers stopped Ketchens in his vehicle, they

asked if he had anything in his vehicle. Ketchens told the officers that he had marijuana in his car

and told them where it was. This confession, along with a tip from a confidential informant

provided the necessary probable cause to conduct a search of Plaintiffs' vehicle.[81] Ketchens

consented to this search. Then, Ketchens invited officers to go back to the house and search for

drugs and opened the door for them to enter the house. Therefore, the officers did not conduct

the search under the purported authority of the forged consent-to-search form, but rather as a

search incident to a lawful arrest for drug possession and based on verbal consent.

Police may search a person and nearby areas if the search is conducted pursuant to a valid

arrest.[82] If an arrestee is allowed to enter a residence, police may follow him and search the

arrestee's "wingspan" within the home,[83] and may also conduct a protective sweep beyond the

wingspan if necessary.[84] Plaintiffs have not argued that the arrest was made without probable

cause. Indeed, a review of the record shows that there can be no genuine dispute about whether

---

[79] Reply at 5 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[80] Reply at 4-5.

[81] *Id.* (citing Deposition of Daren Ketchens ("Ketchens Dep.") at 20:15-22:9, Ex. B to Reply, docket no. 177-2, filed Oct. 27, 2016).

[82] *Chimel v. California*, 395 U.S. 752 (1969); *Arizona v. Gant*, 556 U.S. 332 (2009); *see Riley v. California*, 134 S.Ct. 2473, 2477 (2014) (explaining that *Chimel* requires that a search incident to arrest be limited to the area within the arrestee's control, where it is justified by the interests in officer safety, and the risks identified in *Chimel* are present in all custodial arrests, even when there is no specific concern about the threat to officers in a particular case, and that *Gant* permits searches of a car where the arrestee is unsecured and within reaching distance of the passenger compartment, or where it is reasonable to believe that evidence of the crime of arrest might be found in the vehicle).

[83] *Washington v. Chrisman*, 455 U.S. 1 (1982).

[84] *Maryland v. Buie*, 494 U.S. 325 (1990).

Ketchens was validly arrested with probable cause. A confidential informant had indicated that Ketchens was in possession of illegal drugs and a handgun,[85] Ketchens committed at least one moving traffic violation,[86] initially refused to pull over during officers' attempts to stop him,[87] openly admitted to possession of marijuana and also to possession of a weapon despite knowing this was impermissible because he was a convicted felon.[88] Accordingly, there was probable cause to arrest Ketchens, and then to conduct searches pursuant to that arrest. The alleged forgery of the consent-to-search form was not the "moving force" behind Plaintiffs' alleged injuries because the search would have taken place regardless of the forged consent-to-search form.

In addition, Ketchens gave consent to search his vehicle and the house. Plaintiffs' Sur-Reply does not dispute any of the facts involving consent. Ketchens said that the officers were welcome to go back to the house and check for drugs when Officer Salmon asked Ketchens if he had any more drugs back at the house. Ketchens's invitation for officers to return to the house allowed the police the opportunity to accompany him back to the home, where he opened the door for them to enter. They then conducted searches within Ketchens's wingspan, and conducted a protective sweep of the home to secure the area.

Because "rigorous standards of culpability and causation must be applied[,]"[89] causation cannot be based simply on "any and all 'bad' or unwise acts, *but rather must [be based on] the specific violation in question*."[90] Therefore, Plaintiffs citation to the testimony of Mr. Pyle stating

---

[85] Cowley Incident Report at 14, Ex. 5 to Motion, docket no. 108-5, filed Mar. 15, 2016.

[86] *Id.*

[87] *Id.*

[88] Salmon Supplemental Incident Report at 17, Ex. 5 to Motion, docket no. 108-5, filed Mar. 15, 2016.

[89] *Brown*, 520 U.S. at 405.

[90] *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009) (emphasis added).

that he was generally "aware of alleged improprieties surrounding search warrants in the NNU"[91] is too generalized to establish the specific and rigorous requirements of causation for a *Monell* claim. Similarly, Cowley's testimony that there were "numerous instances of illegal and improper conduct related to searches[,]" including "fabricating probable cause to search by claiming to smell marijuana" is not specific enough to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[92]

Because there was probable cause to conduct a search in this case, as well as verbal consent, Plaintiffs have failed to show that there is a direct causal link between the preparation of false reports and the deprivation of Plaintiffs' rights. Thus, Plaintiffs have failed to establish the causation element of their *Monell* claim and Defendants' Motion should be granted.

### State of Mind

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."[93] The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. Deliberate indifference may also be found absent a pattern of unconstitutional behavior

---

[91] Opposition at 4, ¶ 8.

[92] *Brown*, 520 U.S. at 404.

[93] *Id.* at 407; *see also Harris*, 489 U.S. at 389.

if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.[94]

Defendants argue that Plaintiffs have failed to establish state of mind as well.[95] Defendants argue that there is a lack of evidence showing "acquiescence of the . . . Defendants when dealing with similar acts."[96] Defendants also argue that Plaintiffs have "failed to provide any evidence that the officers involved in this situation were not adequately trained on executing search warrants or consent-to-search forms . . . ."[97]

Plaintiffs cite to evidence that "Coyle and MT Johnson, respectively third and fourth in command of the NNU and both supervisors of the unit," were aware that false reports were being prepared to conduct searches and seizures.[98] This factual testimony is viewed in the light most favorable to the non-moving party. Cowley's testimony also shows that Cowley was told not to discuss potentially problematic searches with Coyle. Thus, West Valley City, through Coyle and MT Johnson, had actual or constructive notice that its action or failure to act would result in a constitutional violations related to searches, and West Valley City, through Coyle and MT Johnson, consciously or deliberately chose to disregard the risk of harm. This happened on "multiple occasions," which proves a pattern of tortious conduct. And even if it cannot be considered a "pattern," a finding of deliberate indifference is appropriate because a violation of federal rights is a highly predictable or plainly obvious consequence of West Valley City's informal policy of preparing false reports to substantiate searches. Therefore, there is at least a

---

[94] *Schneider*, 717 F.3d at 770-71 (citing *Barney*, 143 F.3d at 1307) (citations and internal quotation marks omitted).

[95] Motion at 14-15.

[96] *Id.* at 15.

[97] *Id.*

[98] Opposition at 16 (citing Cowley Dep. at 15:5-21, 82:22-24).

genuine issue of material fact about whether West Valley City demonstrated deliberate indifference to the constitutional rights of Plaintiffs.

## CONCLUSION

Even though an official policy may have been established by West Valley City, and the policy may have been adopted with deliberate indifference by West Valley City, there is *no* genuine dispute about whether the official policy was the direct cause or moving force behind Plaintiffs' alleged injuries. Therefore, because Plaintiffs have not identified evidence showing a genuine dispute about causation—an essential element of their *Monell* claim—Defendants' motion will be granted.

## ORDER

IT IS HEREBY ORDERED that the Motion[99] is GRANTED. Plaintiffs' Second Cause of Action is DISMISSED WITH PREJUDICE.

Dated January 11, 2017.

BY THE COURT:

David Nuffer
United States District Judge

---

[99] Defendant West Valley City and Thayle Nielsen's Motion for Summary Judgment ("Motion"), docket no. 108, filed Mar. 15, 2016.